IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

GARY D. HEVEL                                                                                              PLAINTIFF

                v.                              Civil No. 12-2011

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Gary Hevel, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

      The Plaintiff filed his application for DIB on December 8, 2008, alleging an onset date of July 2, 2008, due to issues with his right hip, a hernia, issues with his spleen, anxiety, and depression. Tr. 124-130, 151, 162-163, 173, 176, 184-185. His claims were denied both initially and upon reconsideration. Tr. 69-71, 73-74. An administrative hearing was then held on April 1, 2010. Tr. 20-66. Plaintiff was present and represented by counsel.

      At the time of the hearing, Plaintiff was 56 years of age and possessed the equivalent of a high school education.[1] Tr. 28, 30. He had past relevant work ("PRW") as a mobile auto glass installer and machine operator/stocker. Tr. 17, 158-161, 205.

      On September 28, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's somatoform disorder, COPD, and hepatitis C did not meet or equal any Appendix 1 listing.

---

[1] Plaintiff had also completed six or nine hours of college credit at a Junior College in Kansas City, but he did not earn a degree or any type of certification. Tr. 30.

Tr. 12-14. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform medium level work, but

> [t]he claimant is to avoid even moderate exposure to dusts, fumes, gases, odors, and poor ventilation. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks and respond appropriately to supervisors, co-workers, and usual work situations, but can have only occasional contact with the general public. The claimant can perform low stress work (defined as occasional decision-making and occasional changes in work place settings).

Tr. 14. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a metal furniture assembler, kitchen helper, and cook helper. Tr. 18.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 15, 2011. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 14, 15.

The court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' appeal briefs and the ALJ's decision and are repeated here only to the extent necessary.

**II.　Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the

case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

  A.  **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

**III.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that he was not disabled because: 1) the ALJ failed to find Plaintiff's cognitive impairment (variously diagnosed as dementia, delirium), hepatic encephalopathy (resulting in difficulty with gait and balance and significantly slowed fine manual dexterity/weak grip), and chronic pain syndrome to be severe impairments; 2) the ALJ erred in his assessment of Plaintiff's treating source opinions; and, 3) the ALJ's RFC assessment was not supported by substantial evidence. We disagree.

In Plaintiff's first issue, he alleges that the ALJ erred in failing to find his cognitive impairment, hepatic encephalopathy, and chronic pain syndrome to be severe impairments. The regulations provide that, "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment." 20 C.F.R. § 404.1520(c); *see also* 20C.F.R. § 404.1521 (stating that an impairment is not severe if it does not significantly limit your ability to do basic work activities). A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)).

In reviewing the evidence in this case, we note that Plaintiff has not consistently sought out treatment for his alleged cognitive impairment/hepatic encephalopathy. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount claimant's subjective complaints of pain based on failure to pursue regular medical treatment). In May 2009, he was treated by Dr. John Kientz for complaints of painful scores on his scalp and problems with his memory. Tr. 275-278. At this time, he did not know the day of the week or the date, but he knew the season, month, and the year. Plaintiff reported nervousness, especially in crowds, and problems with sporadic sleep disturbance. Dr. Kientz diagnosed him with dementia or depression, dermatitis or vasculitis, hepatitis C, a ventral hernia, and COPD. Plaintiff returned to Dr. Kientz's office on June 15, 2009, to review his test results. Tr. 274,

310-311. Again, Dr. Kientz diagnosed him with dementia, depression, chronic pain syndrome, COPD, hepatitis C, and dermatitis. There was some question as to whether the dermatological issues could also be neurological. On July 2, 2009, Plaintiff was hospitalized due to frequent falls, delirium, and disorientation. Tr. 287-303. According to his wife, his behavior had become increasingly erratic and at times violent. A CT scan of his brain showed mild generalized atrophy in a nonspecific pattern most consistent with small-vessel disease. X-rays of his chest showed COPD with mild infiltrative or fibrotic changes in both lower lung fields. Dr. Kiertz noted that Plaintiff's history of alcohol abuse and that he had not been taking the Chronulac[2] at home as prescribed. Therefore, he was restarted on Chronulac and given Haldol, Albuterol updraft treatments, and Rocephin. Ativan was also ordered. A psychiatric evaluation was ordered to determine whether Plaintiff was applicable for Senior Care. Although the evaluation is not included in the record, it is noted that he did not qualify. Plaintiff was released home on July 5, 2009, with diagnoses of delirium, hepatic encephalopathy[3] with elevated blood ammonia, cirrhosis, and a history of alcoholism. Tr. 286. Plaintiff was prescribed Diazepam and Thergran N. At the time of discharge, Plaintiff was stable, ambulatory, and in no distress. And, Plaintiff sought no further treatment for his alleged cognitive dysfunction/hepatic encephalopathy.

We note that the mental evaluations/cognitive assessments conducted in connection with his application for disability also failed to provide support for his claim. On February 16, 2009, Dr. Kathleen Kralik conducted a Mental Diagnostic Evaluation. Tr. 220-227. She did note that her impressions/diagnosis were based on the information available to her and were considered

---

[2]Chrondulac is a stool softener used to treat or prevent the complications of liver disease (hepatic encephalopathy). *See* Chronulac Oral, http://www.webmd.com/drugs/drug-6725-chronulac+oral.aspx?drugid=6725&drugname=chronulac+oral (last accessed December 20, 2012).

[3]Hepatic encephalopathy is a deterioration of brain function that occurs because toxic substances normally removed by the liver build up in the blood and reach the brain. *See Hepatic Encephalopathy*, http://www.merckmanuals.com/home/liver_and_gallbladder_disorders/manifestations_of_liver_disease/hepatic_encephalopathy.html (Last accessed December 19, 2012). It is often triggered by bleeding in the digestive tract, an infection, failure to take drugs as prescribed, and alcohol consumption. *Id*.

preliminary/provisional. And, she felt that a more formalized, comprehensive psychological assessment would be required for a more definitive diagnosis. However, many of her notations are worthy of recitation. First, Dr. Kralik indicated that Plaintiff seemed to be dramatic and evasive and exaggerated his ongoing mental symptoms, especially when asked about his improvement on Citalopram. He alleged memory problems, disorientation, confusion, and hepatitis C, but indicated that he still consumed alcohol on a daily basis. And, Plaintiff admitted to having low motivation prior to getting sick and denied a history of mental health/substance abuse treatment. Plaintif was fully oriented and in touch with reality, but he put forth low mental effort, tending to defer to others to do the thinking for him when he was capable to preforming these tasks for himself. Plaintiff even acknowledge there was nothing about his cognitive or mental condition that would theoretically preclude participation in gainful occupational endeavors. He exhibited no difficulty processing or comprehending instructions and his speech was easily understood. Dr. Kralik concluded that the evasiveness and distortions evident in his report likely reflected a generally deceptive style associated with his personality issues more so than a true inability to communicate in a direct, honest, and effective manner. His ability to attend and sustain concentration on basic tasks was adequate for occupational purposes, his capacity to sustain persistence in completing tasks seemed adequate for occupational purposes though motivational issues had been chronic, and his capacity to complete work-like tasks within an acceptable time frame was adequate. However, Plaintiff was not able to manage his own funds. Dr. Kralik diagnosed him with psychological factors affecting medical condition (maladaptive health behaviors; non compliance with medical directives); polysubstance dependence: nicotine and alcohol dependence (at minimum), ongoing; intermittent abuse of prescription drugs (e.g., codeine and sleeping pills); IV methamphetamine abuse and longstanding marijuana dependence allegedly in sustained remission; and Personality Disorder not otherwise specified (with antisocial, narcissistic, histrionic parasitic-dependent with passive-aggressive personality features. She estimated his global assessment of functioning score to be between 45 and 55. Tr. 225. Dr, Kralik

also stated that Plaintiff did not seem motivated to stop the behaviors that exacerbated his alleged physical symptoms such as smoking and alcohol consumption.

On January 22, 2010, Dr. Patricia Walz conducted an assessment of Plaintiff's cognitive functioning. Tr. 333. Again, he reported problems with memory, stating that he had been fired from a job because he could not remember to clock in. Plaintiff felt his memory problems were getting worse over time. Dr. Walz noted that his speech was somewhat dysarthric and he did not follow instructions well. He also experienced problems with visual scanning and difficulty finding items on the page. On the Dementia Rating Scale his score was in the severely impaired range. And, he scored significantly below average on tests of initiation/perseveration, conceptualization, and memory. On the California Verbal Learning Test he demonstrated significant impairment in free recall, and scored within the impaired range on the Aphasia Screen. His fine manual dexterity was significantly slowed bilaterally, his grip was weak bilaterally, and he demonstrated possible left hemianopsia. Tr. 339-340. Dr. Walz concluded that Plaintiff demonstrated significant impairment in areas of memory, complex problem solving, comprehension, initiation/perseveration, and motor skills. His wife reported a history moodiness and alcohol abuse which suggested a premorbid mood disorder, possibly bipolar type. She did not conduct a comprehensive neuropsychological evaluation, so the etiology of his impairment was not clear. However, Dr. Walz indicated that contributing etiologies could be traumatic brain injury, alcohol abuse, or early onset Alzheimer's Disease. She recommended a comprehensive neuropsychological evaluation. Dr. Walz further opined that he would definitely need continued supervision of finances and medication due to his poor judgment and memory impairment. Tr. 340. And, she diagnosed him with a cognitive impairment of unknown etiology and a history of alcohol abuse versus dependence and assessed him with a GAF of 30-35.

Dr. Walz also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) finding that he had marked limitations in his ability to make judgments on simple work-related

7

decisions and understand, remember, and carry out complex instructions. Tr. 341. She felt that his problems probably dated back to his car accident in 1999, during which he sustained a head injury and was hospitalized for seven days.[4]

On May 4, 2010, Dr. Walz was asked to reevaluate Plaintiff and complete a comprehensive neuropsychological evaluation. Tr. 344-351. He was slow to respond, a bit irritable and edgy, and frequently scowled. Plaintiff seemed oblivious to time constraints and exhibited poor frustration tolerance, but persisted when prompted to do so. He looked disgusted and discouraged. His fine manual dexterity was extremely slow and his grip was weak bilaterally. Tr. 349. Dr. Walz noted that his effort was far below individuals who had sustained severe brain injuries and was within the range of random responding, rendering his test results suspect. Testing revealed a full scale IQ 75, signifying borderline intellectual functioning. Dr. Walz's diagnostic impression was probable cognitive deficits secondary to a traumatic brain injury and anoxia, polysubstance abuse in questionable remission, and antisocial traits. She assessed him with a GAF between 45 and 50. Tr. 351. However, given his lack of effort and the absence of medical records to determine the severity of his head injury, she could not make a definitive diagnosis regarding his cognitive impairment.

We note that two of the three psychological/neuropsychological exams revealed a lack of effort on Plaintiff's part, making it impossible to render a definitive diagnosis regarding any alleged cognitive impairment. Some exaggeration of impairments was also noted by Dr. Kralik. And, of course, we note Plaintiff's own failure to refrain from the consumption of alcohol and failure to take his medications as prescribed in spite of his hepatitis C, which we note are both contributing factors in hepatic encephalopathy. 20 C.F.R. § 404.1530 (1990) ( To receive Social Security disability benefits, a claimant must follow treatment prescribed by his physician if such treatment will restore his ability to work. ). Also of significance is the fact that Plaintiff's hepatic encephalopathy was responsive to treatment and

---

[4]The record does not, however, contain any medical records to document said head injury.

that he was hospitalized for it on only on occasion. *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) (holding conditions which can be controlled are not disabling); *Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). At the time of discharge, he was stable, ambulatory, and in no distress. And, no further treatment was sought for this impairment. Accordingly, we can not say that the ALJ erred in concluding that Plaintiff's alleged cognitive/mental impairments were not severe.

As for Plaintiff's alleged difficulty with gait, balance, and grip, we note that Plaintiff did not allege these impairments in his application for disability. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (holding fact that claimant did not allege disabling condition in his application is significant). We also fail to find evidence to indicate that these impairments were severe. While it is true that Dr. Walz noted slowed fine manual dexterity/weak grip in both of her psychological/neuropsychological evaluations, there is no evidence that Plaintiff sought out treatment for these symptoms. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, Plaintiff testified that his hobbies included building model airplanes, which requires a certain amount of manual dexterity. Tr. 52.

Plaintiff was hospitalized in July 2009 for hepatic encephalopathy, at which time he reported falling several times and underwent some therapy, but the record is devoid of any additional medical evidence to indicate that Plaintiff continued to experience difficulties with this. And, although we do note Plaintiff's use of a cane to help him stand up, we also note his own admission that the cane had not been prescribed by a physician and that he did not need it to walk. Tr. 30, 337. Therefore, given the definition of a severe impairment, we can not say the ALJ erred in concluding these impairments were not severe.

Concerning Plaintiff's chronic pain, we believe that this impairment was taken into consideration when the ALJ concluded that Plaintiff's hepatitis C constituted a severe impairment. A review of the

9

symptoms associated with hepatitis C include fatigue, fever, nausea or poor appetite, muscle and joint pains, and tenderness in the area of the liver. Clearly, this would result in chronic pain. *See Hepatitis C*, http://www.mayoclinic.com/health/hepatitis-c/DS00097/DSECTION=symptoms (last accessed December 19, 2012). And, we note that Plaintiff failed to seek out consistent treatment for his alleged pain. *Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). In November 2008, he was prescribed Naproxen for body pain, but the remainder of his medical records are centered around treatment for bronchitis/asthma and an infection on his scalp. His own statement that he was able to play with his grandson, prepare simple meals, wash dishes, take out the trash, go outside one or two times per day, and walk for exercise also undermines his allegations of disabling chronic pain. Tr. 164-171, 186-193. Accordingly, we can not say that Plaintiff's chronic pain was severe.

Plaintiff next contends that the ALJ erred in weighing his treating source statements. Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). The Eighth Circuit has held that the resolution of conflicting evidence is within the province of the ALJ. *See Brachtel v. Apfel*, 132 F.3d 417, 420 (8th Cir. 1997).

On February 4, 2010, Dr. Kientz completed an Attending Physician's Statement. Tr. 332. He indicated that he had been treating Plaintiff since 1980. Dr. Kientz diagnosed Plaintiff with chronic pain syndrome involving the body/hips; COPD with asthma; chronic hepatitis C with cirrhosis; neuro

10

dermatitis; and, dementia with hepatic encephalopathy. He concluded that Plaintiff's symptoms were severe enough to interfere with his attention and concentration, and to affect his ability to tolerate work stress. It was Dr. Kientz's opinion that Plaintiff would need to take unscheduled breaks during an eight hour work shift, and would likely be absent from work about two days per month. He further indicated that Plaintiff could not tolerate any exposure to dust, fumes or gases, secondary to his COPD and asthma. Dr. Kientz indicated that Plaintiff's mental status was his greatest limitation, while pain in his lower back and bilateral hips were his next most limiting features necessitating use of a cane for uneven ground and stairs. Tr. 332.

However, we note that Dr. Kientz treated Plaintiff on only three occasions during the relevant time period. A review of those records reveals that he did not treat Plaintiff for back or hip pain, although he indicates that it is Plaintiff's second most limiting condition. Further, when Dr. Kietz released Plaintiff from the hospital, which was his last occasion to treat Plaintiff prior to rendering his opinion, Plaintiff was reportedly stable and ambulatory. No limitations were noted. And, Dr. Kientz offered no explanation or rationale for his assessment and pointed to no objective medical evidence to support his conclusions. As such, the ALJ was clearly within his province in concluding that Dr. Kientz's assessment was not supported by the overall evidence, and giving it less weight.

Plaintiff also questions the ALJ's consideration of Dr. Walz's assessments. We note that Dr. Walz's January 2010 assessment does not find support in the record for several reasons. First, it conflicts with the assessment conducted by Dr. Kralik in 2009. Second, it is called into question by her own statement that neuropsychological testing was necessary to determine the etiology and severity of Plaintiff's purported cognitive limitations and her May 2010 assessment. The second assessment complete with neuropsychological testing revealed minimal effort on the part of the Plaintiff and proved inconclusive. In fact, she could not even provide a conclusive diagnosis.

11

It is also significant to note that Dr. Walz treated Plaintiff on only two occasions, hardly enough to call her a treating physician. And, absent these assessments conducted in connection with his disability application, Plaintiff reported no history of mental health treatment or evaluation. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is significant consideration when evaluating allegations of disability due to a mental impairment). Therefore, while the ALJ did consider her report, he was not required to give it controlling weight. It is clear to the undersigned that Plaintiff was capable of understanding, remembering, and carrying out simple, routine, and repetitive tasks; responding appropriately to supervisors, co-workers, and usual work situations; having only occasional contact with the general public; and performing low stress (defined as occasional decision-making and occasional changes in work place settings) work.

Lastly, Plaintiff contests the ALJ's determination that he should avoid even moderate exposure to dust, fumes, and gases. He argues that Dr. Kientz indicated that he should have no exposure to these elements. When the ALJ questioned the vocational expert regarding the availability of work for an individual who can have no exposure to these elements, the expert indicated that there were no jobs where you could guarantee that an individual would not be exposed to dust, fumes, or gas. And, the undersigned understands that some exposure to dust and fumes--whether they be in the form of another's perfume in an elevator, fumes from a vehicle in a driveway or parking lot, or fumes from industries in the area--is inevitable in daily life. Accordingly, we find that the ALJ's determination that Plaintiff should avoid even moderate exposure to these elements was sufficient in this case. *See Buckner v. Astrue*, 646 F.3d 549, 561(8th Cir. 2011) (holding the ALJ's hypothetical need not frame impairments in specific diagnostic terms, but instead should capture the concrete consequences of Plaintiff's impairment).

AO72A
(Rev. 8/82)

Likewise, we find substantial evidence to support the ALJ's determination that Plaintiff could perform medium level work with the mental and environmental limitations outlined above. Plaintiff's failure to seek consistent treatment for his impairments, lack of prescription pain medications, continued use of alcohol in spite of his hepatitis C, failure to take his medication as prescribed, and daily activities contained in his adult function reports all weigh against his subjective complaints.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 20th day of December 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)